UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DANIEL L. RITTNER, SR., | ) | CASE NO. 3:06 CV 973 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. KATZ |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| JAMES BARBER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On April 20, 2006, plaintiff pro se Daniel L. Rittner, Sr. filed the above-captioned action under 42 U.S.C. § 1983 against the Corrections Center of Northwest Ohio ("CCNO"), CCNO Vice Chairman James Barber, CCNO Director Jim Dennis, CCNO Inmate Programs Manager Linda Shambarger, CCNO Education Instructor Donald Donaldson, CCNO Director Scott Bradbee, CCNO Director Sullivan, CCNO Accreditation Supervisor Jenny Tornes, CCNO Inspector Tom Clay, CCNO Corrections Officer Mike Vaughn, Allen Correctional Institution ("ACI") Unit Manager Leslie Kinder, Fulton County Commissioner Paul Barnaby, Fulton County Commissioner Dean Genter, Fulton County Commissioner Jack Graf, and "other unknown persons, officers, agents, servants, employee, attorneys or the agency the defendants represent." (Compl. at 3.) In the complaint, Mr. Rittner raises multiple concerns about his treatment at CCNO. He seeks

unspecified compensatory, and punitive damages.

## *Background*

Mr. Rittner lists numerous complaints relating to the conditions of his confinement. He claims:

1. CCNO meals were not nutritious. He refers to them without explanation as a "starvation diet." (Compl. at 7.)

2. He was denied outdoor recreation until April 17, 2004.

3. Corrections Officer "Pam" harassed him for assisting an inmate with legal work.

4. Pam refused to sharpen his pencils in June 2004.

5. Pam threatened him a second time for assisting an inmate with legal work.

6. Pam searched his cell and confiscated food which he claims was medically necessary.

7. His cell was searched while he was at the law library.

8. Pam would not give him privacy to talk to the nurse.

9. He was classified as a maximum security prisoner and was denied a security classification reduction by ACI Unit Manager Kinder.

10. Medical screenings can take place "in specific instances at 0130 hrs and 0400 hrs, as found in nurse screening forms found by plaintiff." (Compl. at 8.)

11. Inmates are forced to stand for a count three times per day.

12. Maintenance was performed at night on two occasions.

13. Trustees are permitted to be out late at night and are sometimes loud.

14. He was denied writing paper by Corrections Officer Vaughn.

15. "Inmates are continually awakened throughout the day and forced to acknowledge all inquiries by staff no matter how trivial." (Compl. at 9.)

2

16. Mr. Rittner was placed in segregation for refusing to stand for count.

17. He was placed in restraints to be taken to segregation which Mr. Rittner believes was excessive force.

18. The resulting disciplinary hearing was a sham.

19. He was denied a Bible, a drinking cup, a pencil, and reading material when he was in segregation from April 23, 2004 to April 25, 2004.

20. Corrections Officer Pat would not inventory his legal materials prior to taking him to segregation.

21. Indigent inmates are not provided with sufficient personal hygiene items.

22. The cell walls are stained with body fluids and are not sanitized before inmates are placed in the cell.

23. Undergarments are reissued to inmates and some of these are stained.

24. From January 2004 until April 2004, the unit was extremely cold.

25. Inmates were not permitted to use blankets in the day or common areas.

26. Inmates were denied the use of towels on which to sit on the bleachers.

27. He was denied the ability to possess first class embossed envelopes for his personal use.

28. Mail from the United States District Court was withheld by Linda Shambarger on June 11, 2004 at the direction of Mr. Dennis.

29. Personal communications to the chaplain, the staff psychologist and medical services are not kept confidential.

30. The law library is cold and consists only of the Ohio Revised Code and six reference books.

31. He was not given sufficient time in GED class to use the typewriter.

32. The GED class was very cold and it was difficult to type. The class room was occasionally disrupted by inmates.

33. Mr. Donaldson handed out typing paper only one page at a time and limited the number of pages that could be typed in an hour to four.

34. Mr. Donaldson threatened to deny plaintiff the use of the typewriter on November 21, 2004.

35. Mr. Donaldson threatened to deny plaintiff the use of the typewriter on July 22, 2004.

36. "In a 'memo' plaintiff received from Donaldson he denies plaintiff personal mail." (Compl. at 13.)

37. He reported chest pains to the nurse on December 12, 2004 and did not receive appropriate care.

38. He requested medical care in November 2004 for a sore on the inside of his lip, a stomach ache, fatigue, and migraines. He repeated his request on December 4, 2004. He contends no medical treatment was provided.

39. He was denied outside recreation by Mr. Dennis in retaliation for filing grievances concerning recreation.

40. Inmate Campbell assaulted other inmates and was continually returned to general population.

41. Ms. Shambarger took pictures of him in the library and in the GED classroom.

42. The inmates in the "EM Unit" were continually out of control and loud but were not disciplined by the staff.

43. A bus on which he was transported for an outside medical appointment was not heated.

44. He was derided for asking Unit Manager Kinder about the grievance process on January 7, 2004.

45. Ms. Kinder "became hostile when plaintiff complained about lost newspapers taken by other inmates." (Compl. at 15.)

46. He was not allowed free time out of his cell after spending the day at court if the inmates in his unit were not on free time rotation.

47. Mr. Dennis and Mr. Barber discussed the evidentiary hearing in Mr. Barber's court.

48. Ms. Kinder informed him he could not be a pro se litigant if he had appointed counsel.

49. He was denied a shower after recreation when he was not on free time rotation.

50. Ms. Kinder interrupted a meeting between Mr. Rittner and his counsel.

51. The Defendants refused to obtain a copy of plaintiff's Living Will.

52. He was denied a private telephone call on a secure telephone line.

53. He was threatened by a female corrections officer for helping another inmate clean his cell.

54. He was ill from lack of food for five days in June 2004.

55. He was chastised by a female staff member for "attempting to prevent a breach of security upon return from GED." (Compl. at 16.)

56. Another inmate exposed himself in the unit on May 13, 2004.

57. Mail from the Fulton County Court was opened outside of his presence on June 14, 2004.

58. He was forced to give his legal work to Ms. Shambarger to make copies.

59. He was denied a flu shot.

60. A trustee cleaned up vomit and dumped it in the inmate shower.

61. He was booked into CCNO under the wrong name.

62. The tables in the dining hall are filthy.

63. Food is left sitting too long after cooking before it is served.

64. "Defendants did not log any incoming legal mail. Inmates were not allowed to sign for receipt of legal mail." (Compl. at 17.)

65. He requested a separation from officer Pam but did not receive requested relief

66. Inmates were not permitted to donate personal items to other inmates.

67. Inmates that did not purchase a personal drinking cup were not given the same portion of drinks at meals.

68. Religious items were confiscated by officer Pam

69. Indigent inmates did not receive deodorant in their hygiene packets.

70. The defendants' attorneys would only respond to the plaintiff if he sent the correspondence by certified mail.

71. Jenny Tornes threatened Mr. Rittner for using the CCNO Hotline.

72. Ms. Tornes refused to make the "American Crediation Association" audit team members available to the plaintiff during their inspection of CCNO in March 2004. (Compl. at 18.)

73. CCNO Inspector Tom Clay refused to investigate Defendant Dennis.[1]

### *Exhaustion of Administrative Remedies*

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in

---

[1] Mr. Rittner actually lists 76 "complaints." Three of these "complaints," however, were duplicates of other complaints already stated.

his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion, the action must be dismissed. Id.

Local jails develop their own grievance procedures. Although Mr. Rittner does not specifically detail the steps in this grievance process, it appears from the attachments to the complaint that the inmate is first required to provide an Offender Request to Staff form to informally address the situation. If the inmate is dissatisfied with that result, he can file an Inmate Grievance Report. If this step does not provide satisfactory results, the inmate can file an appeal of that grievance to the Executive Director of CCNO. The Chief Executive's decision appears to be the final step in the grievance process.

To demonstrate exhaustion of administrative remedies, Mr. Rittner attaches four complete sets of grievances and two grievance forms which were not appealed to the final grievance authority. He filed an Offender Request to Staff form on January 8, 2004 stating he was not given sufficient access to the law library, that the indigent legal package did not contain sufficient supplies such as postage, and paper, and that he required additional time to use the law library. That Request was denied at a later date and he filed a grievance and an appeal of the denial of that grievance. Mr. Rittner filed a second Offender Request to Staff form on January 9, 2004, one day after submitting the first, again requesting additional time in the law library and requesting free photocopies of motions he was preparing. The request was denied. There is no Inmate Grievance Report relating to this Offender Request to Staff form attached to his complaint. Mr. Rittner filed two Offender Request to Staff forms on February 17, 2004. The first form requests that CCNO make free copies of documents he wishes to submit to the court as evidence and other legal materials, and that he be given additional time in the law library. The second form requests a

notepad and paper which were confiscated from him upon his arrival at the jail, and additional supplies of paper, postage, copies and other supplies. Both requests were denied and the subsequent grievances were appealed through the process to the highest grievance authority. He filed a fourth Offender Request to Staff form which was submitted on February 26, 2004 asking for a person trained in the law to help him prepare a civil rights action. He also asked for additional supplies such as postage, copies, and paper. This grievance was also appealed to the highest authority. Finally, on March 12, 2004, he filed an Offender Request to Staff form asking for the notepad and free legal copies. If he filed a formal grievance and an appeal of that decision, he did not attach copies of those filings to his complaint.

While Mr. Rittner may have arguably exhausted his claims for additional library time, additional supplies with which to draft legal documents, free copies, and return of his notepad, he has not demonstrated that he exhausted the seventy three claims he asserts in this pleading. It is not sufficient for the inmate to merely follow the grievance process; in order to satisfy the administrative requirements of § 1997e, the content of the grievances must also be adequate. Spencer v. Bouchard, No. 05-2562, 2006 WL 1528876, slip op. at *3 (6th Cir. June 6, 2006). None of the 73 "complaints" set forth in the pleading are readily identified as the 3 claims Mr. Rittner exhausted through the grievance process.

Mr. Rittner contends that he was prevented from exhausting these claims because he was told his grievances were frivolous and was ordered to "cease and desist the use of the grievance procedure by defendants." (Compl. at 2.) The request to "cease and desist" came in an answer to the appeal of Mr. Rittner's fourth grievance in two months regarding the denial of additional library time, the lack of a legal assistant to prepare his pleadings, and the denial of additional supplies such as postage, copies, and paper. Mr. Dennis answered the grievance by

8

remarking that "[y]ou are to work through your Case Manager and Ms. Shambarger as I have directed you in the past." Then, commenting on Mr. Rittner's continued efforts to file the same grievance numerous times, Mr. Dennis stated, "This is frivolous. You are abusing the grievance procedures and my time. Cease and desist." (Compl. Ex. T.) There is no suggestion in any of the documents presented in the complaint or in any of the allegations in the complaint that Mr. Rittner was prevented from filing grievances for the seventy three claims he asserts in this pleading.

### *Conclusion*

Accordingly, this action is dismissed without prejudice pursuant to 42 U.S.C. §1997e. Further, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

/s/ David A. Katz

DAVID A. KATZ
UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a) provides, in pertinent part:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.